UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cr-00220-JMS-MJD |
| | ) | |
| VICTOR J. DOMINGUEZ-FERNAND (01), | ) | |
| *et al.* | ) | |
| Defendants. | ) | |

**<u>ORDER ON MOTION TO SUPPRESS</u>**

Presently pending before the Court is Defendant Victor J. Dominguez-Fernand's Motion to Suppress. [Filing No. 71.] Mr. Dominguez-Fernand has been indicted with one count of possession with intent to distribute methamphetamine and one count of conspiracy to possess with intent to distribute methamphetamine. [Filing No. 22.] He moves to suppress evidence found in the vehicle he was driving after what he contends was an unconstitutional traffic stop in violation of the Fourth Amendment to the United States Constitution. [Filing No. 72.] The Government opposes his motion, [Filing No. 72], and the Court held an evidentiary hearing on May 26, 2016,[1] [Filing No. 87]. Mr. Dominguez-Fernand filed an unanticipated supplemental memorandum on June 6, 2016, [Filing No. 92], the Court allowed the Government to file a response, [Filing No.

---

[1] Although the Government argued that an evidentiary hearing on Mr. Dominguez-Fernand's motion was unnecessary, [Filing No. 78 at 5], the Court disagreed. The parties submitted conflicting evidence with their briefs regarding the circumstances surrounding the traffic stop at issue, [*see, e.g.*, Filing No. 72-1 (Mr. Dominguez-Fernand's affidavit); Filing No. 78-1 (Deputy Ernstes' affidavit)], rendering a hearing necessary, *see United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) (holding that district courts are required to conduct hearings on a motion to suppress "when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion").

93], and it has now done so, [Filing No. 94]. For the reasons that follow, the Court grants Mr. Dominguez-Fernand's Motion to Suppress. [Filing No. 71.]

**I.**
**APPLICABLE STANDARD**

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. . . ." U.S. Const. amend. IV. Generally, a warrantless search or seizure in the absence of probable cause is unreasonable. United States v. Slone, 636 F.3d 845, 848-49 (7th Cir. 2011). When police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence. Id.

The Government bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause. United States v. Peters, 743 F.3d 1113, 1116 (7th Cir. 2014) (citations omitted). This means that the Government meets its burden when it establishes that its position is more probably true than not true. See, e.g., Crabtree v. Nat'l Steel Corp., 261 F.3d 715, 722 (7th Cir. 2001) (affirming the district court's explanation of the burden of proof for a preponderance of the evidence standard sufficient when defined as "more probably true than not true"). "When a police officer reasonably believes that a driver has committed even a minor traffic offense, probable cause supports the stop." Peters, 743 at 1116; see also United States v. Reaves, 796 F.3d 738, 741 (7th Cir. 2015) ("An officer has probable cause for a traffic stop when she has an 'objectively reasonable' basis to believe a traffic law has been violated.").

## II.
### FINDINGS OF FACT[2]

What follows is a description of the evidence submitted with the parties' briefs and presented at the evidentiary hearing held on Mr. Dominguez-Fernand's Motion to Suppress. In summarizing this evidence and ultimately making the findings of fact, the Court has considered the video evidence presented, as well as the testimony and demeanor of the witnesses who testified at the evidentiary hearing: Hancock County Sheriff Deputy Nicholas Ernstes, Mr. Dominguez-Fernand, and Timothy Ziegler.[3]

Deputy Ernstes has been a certified police officer since 1998 and a certified K9 handler since 2013. He is a coordinator of the ProActive Criminal Enforcement ("PACE") unit. The purpose of the PACE unit is to enforce traffic regulations and find drug contraband.

At approximately 10:30 a.m. on November 18, 2015, Deputy Ernstes was parked in a fully marked police car in a median on Interstate 70, observing traffic approaching mile marker 113. He had a K9 dog, Manni, in the police car with him. Deputy Ernstes' police car was equipped with a dashboard camera (the "dash-cam") that he could manually turn on to record. Alternatively, when Deputy Ernstes activated the police car's emergency lights, the dash-cam would automatically back up thirty seconds and record from that point forward.

---

[2] To the extent that any findings of fact should be considered conclusions of law, they should be deemed to be such.

[3] Mr. Ziegler, who works with Mr. Dominguez-Fernand's defense counsel, testified regarding the authenticity of Defendant's Exhibit 1—a video Mr. Ziegler took the day before the evidentiary hearing of the relevant portion of Interstate 70. The Court gave the Government twenty-four hours after the hearing to decide whether it would submit evidence in response, [Filing No. 87 at 1], but it notified the Court the following day that it would not do so. The video was not played at the hearing, but the Court did review it after the hearing.

The weather was rainy and overcast on the morning in question. From his location, Deputy Ernstes could see the approaching cars for roughly one mile down the interstate, and approximately 90% of the cars he saw had their headlights turned on. The speed limit for that portion of the interstate is 70 miles per hour.

Mr. Dominguez-Fernand was driving a black Mitsubishi Mirage rental car with New York license plates.[4] Defendant Ishmal Hamilton was in the passenger seat of the car. Mr. Dominguez-Fernand is Dominican and Mr. Hamilton is African-American. Mr. Dominguez-Fernand's car came to the attention of Deputy Ernstes as it approached mile marker 113 on Interstate 70 because it was traveling approximately 58 miles per hour in the right lane. Deputy Ernstes testified that he believed the headlights on Mr. Dominguez-Fernand's car were turned off, which he thought was a traffic violation because of the weather conditions. Deputy Ernstes did not see any vehicles around Mr. Dominguez-Fernand's car. He testified that he pulled out from the median 30 seconds to one minute after Mr. Dominguez-Fernand's car passed and caught up to the car three miles later around mile marker 110. It is undisputed that the headlights on Mr. Dominguez-Fernand's car were turned on when Deputy Ernstes caught up to him and that Mr. Dominguez-Fernand's car was still traveling at 58 or 60 miles per hour in the right lane.

Deputy Ernstes testified that when he caught up to Mr. Dominguez-Fernand's car, he saw that it was too closely following a vehicle in front of it. It was unclear from his testimony at the hearing whether he observed this from his police car when it was next to or behind Mr. Dominguez-Fernand's car. Deputy Ernstes attested in an affidavit submitted before the hearing that he "pull[ed] his vehicle even with the black Mitsubishi" to confirm its speed and observed at that time

---

[4] Because there is no evidence that Deputy Ernstes was aware that the car was a rental car before he stopped it, that fact is not relevant to the Court's analysis. Thus, the Court will refer to the car Mr. Dominguez-Fernand was driving as "Mr. Dominguez-Fernand's car."

4

that it was allegedly following the vehicle in front of it too closely. [Filing No. 78-1 at 1-2.] Deputy Ernstes does not remember what type of vehicle was in front of Mr. Dominguez-Fernand's car. Deputy Ernstes testified that he used a method that involved counting the "skip lines" on the roadway to determine that Mr. Dominguez-Fernand's car was allegedly closer to the vehicle in front of it than the "two-second rule" established in the Indiana Driving Manual. Deputy Ernstes testified that based on that calculation, he believed Mr. Dominguez-Fernand had violated Indiana Code § 9-21-8-14. [*See also* Filing No. 78-1 at 1-2.] Deputy Ernstes testified that he only saw the alleged traffic infraction for a few seconds.

Deputy Ernstes continued to follow Mr. Dominguez-Fernand's car and ultimately activated his police car's emergency lights, stopping Mr. Dominguez-Fernand's car around mile marker 108. Because Deputy Ernstes did not manually turn on the dash-cam to record before that point, it is undisputed that the available dash-cam video does not show either of the alleged traffic violations that Deputy Ernstes testified he witnessed Mr. Dominguez-Fernand commit.

The available dash-cam video shows that the taillights on Mr. Dominguez-Fernand's car were on for at least 30 seconds before Deputy Ernstes turned on his emergency lights. It shows that it was raining and that a box truck was in the distance in front of Mr. Dominguez-Fernand's car. Mr. Dominguez-Fernand immediately pulled his car to the side of the road when Deputy Ernstes activated his emergency lights. Deputy Ernstes got out of his police car and ultimately told Mr. Dominguez-Fernand that he stopped him for too closely following the vehicle in front of him. Deputy Ernstes never mentioned the headlight violation he allegedly observed when he first saw Mr. Dominguez-Fernand's vehicle around mile marker 113.

Mr. Dominguez-Fernand gave his license to Deputy Ernstes upon request, and Deputy Ernstes determined that Mr. Dominguez-Fernand's license was suspended. Mr. Dominguez-

Fernand, whose primary language is Spanish, then told Deputy Ernstes he was unaware it was suspended. He learned after the traffic stop that it was suspended because he had not appeared in court for some traffic tickets. Mr. Dominguez-Fernand had been driving for several hours and it had been raining heavily for ten to fifteen minutes before he was stopped by Deputy Ernstes. Mr. Dominguez-Fernand specifically remembered that the headlights on the car were turned on because he had been continuously driving through the night and the car's dashboard was lit up for visibility. He emphasized that he drove a delivery truck for a living and that he was intentionally driving slower than the speed limit because of the rain. He maintained a five or six second distance between his car and the box truck in front of him because it was spraying a lot of water up because of the rain. Indeed, the dash-cam video shows that the rain caused trucks traveling on Interstate 70 to spray water behind them for a considerable distance.

Mr. Dominguez-Fernand does not challenge that he ultimately gave Deputy Ernstes consent to search the car. Deputy Ernstes deployed his K9 dog and, upon further investigation, Deputy Ernstes and another officer that had arrived at the scene located in the car what was later determined to be methamphetamine.

On December 8, 2015, Mr. Dominguez-Fernand was indicted with one count of possession with intent to distribute methamphetamine and one count of conspiracy to possess with intent to distribute methamphetamine. [Filing No. 22.] He filed a Motion to Suppress on April 11, 2016, [Filing No. 71], and the Government opposes that motion, [Filing No. 78; Filing No. 94].

### III.
#### DISCUSSION

Mr. Dominguez-Fernand seeks to suppress the evidence of methamphetamine recovered after what he contends was an illegal stop of the car he was driving. At issue in this case is whether the Government has met its burden to show by a preponderance of the evidence that Mr.

Dominguez-Fernand committed a traffic offense, such that Deputy Ernstes had probable cause to stop Mr. Dominguez-Fernand's car. Mr. Dominguez-Fernand and Deputy Ernstes dispute the two key facts at issue—namely, whether Mr. Dominguez-Fernand was driving without his car's headlights turned on in violation of Indiana Code § 9-21-7-2(a) and whether he followed another vehicle too closely in violation of Indiana Code § 9-21-8-14. It is undisputed that neither of Mr. Dominguez-Fernand's alleged traffic violations are visible on the dash-cam video admitted into evidence. [Filing No. 73.] Thus, this case presents two key questions of fact, the answers to which the Court will determine based on the evidence of the circumstances surrounding the stop and the credibility of the testimony presented by the witnesses at the evidentiary hearing.

### A. Alleged Headlight Violation

The parties dispute whether the headlights on Mr. Dominguez-Fernand's car were turned off in violation of Indiana Code § 9-21-7-2(a) as he approached Deputy Ernstes at mile marker 113 on Interstate 70. [Filing No. 72; Filing No. 78.] Deputy Ernstes testified at the evidentiary hearing that Mr. Dominguez-Fernand's car's headlights were off, but Mr. Dominguez-Fernand testified that the headlights were on the entire time. [*See also* Filing No. 72-1 (Mr. Dominguez-Fernand's affidavit); Filing No. 72-2 (Deputy Ernstes' affidavit).]

Indiana Code § 9-21-7-2(a) provides, in relevant part, that between sunrise and sunset, each vehicle traveling upon a highway "must display lighted head lamps and other illuminating devices" if "persons and vehicles on the highway are not clearly discernible at a distance of five hundred (500) feet ahead."

Based on his demeanor and explanation at the evidentiary hearing, the Court finds Mr. Dominguez-Fernand's testimony that he had been driving since it was dark and that he knew the headlights on his car were on because the dashboard was illuminated to be credible. Deputy

7

Ernstes' dash-cam video bolsters this conclusion. First, it confirms that the taillights on Mr. Dominguez-Fernand's car were illuminated at least 30 seconds before Deputy Ernstes stopped him a few minutes later. Second, the video confirms that Deputy Ernstes did not mention the alleged headlight violation as a reason for the stop when he spoke with Mr. Dominguez-Fernand. For these reasons, the Court concludes that the Government has not met its burden to prove by a preponderance of the evidence that Deputy Ernstes had a reasonable belief that the headlights on Mr. Dominguez-Fernand's car were turned off as his car approached Deputy Ernstes at mile marker 113 on Interstate 70.

Alternatively, even if Mr. Dominguez-Fernand's headlights were turned off as he approached Deputy Ernstes, Deputy Ernstes' testimony at the evidentiary hearing confirms that the headlights did not need to be turned on pursuant to Indiana Code § 9-21-7-2(a). Deputy Ernstes testified that as he was parked in the median on Interstate 70, he could see cars approaching him roughly one mile away and that 90% of them had their headlights on. The Court takes judicial notice that one mile is equal to 5,280 feet. Indiana Code § 9-21-7-2(a) only requires a car to have its headlights turned on if it is not "clearly discernible at a distance of five hundred (500) feet ahead." Thus, because Deputy Ernstes' testimony confirmed that even in the rainy weather conditions at issue he could see vehicles approaching well more than 500 feet away, the Court finds that Mr. Dominguez-Fernand was not required to have the headlights on his car turned on pursuant to Indiana Code § 9-21-7-2(a).

For these reasons, the Court finds that the Government has not met its burden to show by a preponderance of the evidence that Deputy Ernstes had probable cause to initiate a warrantless stop of Mr. Dominguez-Fernand's car for allegedly violating Indiana Code § 9-21-7-2(a).

### B. Alleged Violation for Following Vehicle Too Closely

The parties dispute whether Mr. Dominguez-Fernand's car followed another vehicle too closely in violation of Indiana Code § 9-21-8-14. [Filing No. 72; Filing No. 78.] Deputy Ernstes testified at the evidentiary hearing that he observed Mr. Dominguez-Fernand's car following another vehicle too closely for a few seconds around mile marker 110 on Interstate 70, but Mr. Dominguez-Fernand testified that he was five or six seconds behind the closest vehicle. [*See also* Filing No. 72-1 (Mr. Dominguez-Fernand's affidavit); Filing No. 72-2 (Deputy Ernstes' affidavit).]

Indiana Code § 9-21-8-14 provides that "[a] person who drives a motor vehicle may not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the time interval between vehicles, and the condition of the highway." The Seventh Circuit Court of Appeals has held that probable cause exists to believe that a driver is following another vehicle too closely under Indiana law "when fewer than two seconds' braking time separated the vehicles." *Peters*, 743 F.3d at 1115 (citing *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (in assessing whether a vehicle is following another more closely than is reasonable and prudent under Indiana law, the "use of the 'two-second rule' as a guide for reasonableness comports with Indiana law")).

It is apparent from the testimony of the witnesses at the evidentiary hearing that Mr. Dominguez-Fernand more clearly remembers the circumstances leading to the traffic stop. For example, Mr. Dominguez-Fernand testified that he was following a box truck and that he knows he was five to six seconds behind it because it was spraying a lot of water and he wanted to maintain a safe distance. He testified that he remained in the right lane, that cars were passing him, and that he remained at a speed between 55 mph and 60 mph during the entire relevant period

9

of time. Although the dash-cam video does not show the exact time period during which Deputy Ernstes alleges that Mr. Dominguez-Fernand violated Indiana Code § 9-21-8-14, it does confirm that a box truck was in the distance in front of Mr. Dominguez-Fernand's car, that it was raining hard enough for water from preceding vehicles—especially trucks—to spray towards a trailing car, that Mr. Dominguez-Fernand's car was in the right lane, and that multiple cars passed him on the left during the 30 seconds before Deputy Ernstes turned on his emergency lights.

On the other hand, Deputy Ernstes testified that he could not remember anything about the type of vehicle Mr. Dominguez-Fernand was allegedly too closely following. Deputy Ernstes' affidavit, however, attests that he pulled alongside Mr. Dominguez-Fernand's car to observe its speed and that it was allegedly too closely following the preceding vehicle, [Filing No. 78-1 at 1-2], which would have given him a clear view of the large box truck Mr. Dominguez-Fernand was following. The imprecise nature of Deputy Ernstes' recollection is further underscored by the Court's previous conclusion that Deputy Ernstes was incorrect about the headlights on Mr. Dominguez-Fernand's car being turned off, as well as Deputy Ernstes' testimony at the hearing that he could only see one person in Mr. Dominguez-Fernand's car, despite the fact that his affidavit states he could see "that two males were located inside of the vehicle" when he pulled alongside it. [Filing No. 78-1 at 2.] The impact of these inconsistencies might have been lessened if Deputy Ernstes had manually turned on his dash-cam to record the traffic violation he claims to have seen. While he admits he could have done so, he did not, depriving the record of significant, reliable evidence. As it stands, the evidentiary record offers little to corroborate Deputy Ernstes' version of events with regard to Mr. Dominguez-Fernand's alleged violation of following another vehicle too closely.

10

Reason and logic also support Mr. Dominguez-Fernand's version. It is undisputed that Mr. Dominguez-Fernand's car was alone on the interstate when Deputy Ernstes initially saw it, traveling in the right lane at a slower rate of speed than the flow of traffic. It is improbable, based on the evidence presented at the hearing, that he would have somehow caught up to motorists who were traveling significantly faster than he was and wind up following too closely in violation of Indiana Code § 9-21-8-14.

The Government seems to contend that Deputy Ernstes' testimony and conclusions alone are sufficient to meet its burden, [Filing No. 94 at 1-2], but it is the Court's role in this context to determine what inferences are appropriate and to make the findings of fact. Here, both the available video evidence and logic corroborate Mr. Dominguez-Fernand's version of events to a greater extent than Deputy Ernstes' version. Given this corroboration, and the absence of corroborating evidence from the dash-cam that was within Deputy Ernstes' control, the Court finds that the Government has not met its burden of proof to show by a preponderance of the evidence that Deputy Ernstes' warrantless stop of Mr. Dominguez-Fernand's car was supported by probable cause.

**C. Exclusionary Rule**

The Court has found that the Government has not met its burden to prove that Deputy Ernstes had probable cause to initiate a warrantless stop of Mr. Dominguez-Fernand's car. Thus, the stop was unlawful. Mr. Dominguez-Fernand asks the Court to suppress the illegal drugs found in his vehicle as a result of the stop. [Filing No. 71.]

The exclusionary rule "forbids the use of unlawfully obtained evidence at trial." *United States v. Gutierrez*, 760 F.3d 750, 754 (7th Cir. 2014). It is a judicially created remedy that prohibits the Government from introducing evidence of guilt at a defendant's trial that was

obtained through violations of the Fourth Amendment. *United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999). Evidence obtained as a result of an illegal arrest is "fruit of the poisonous tree" and must be excluded unless the Government can show that an exception applies. *United States v. Swift*, 220 F.3d 502, 507 (7th Cir. 2000).

The Court has already held that the Government has not met its burden to show by a preponderance of the evidence that Deputy Ernstes had probable cause to stop Mr. Dominguez-Fernand's car. Thus, the exclusionary rule forbids use of the unlawfully obtained evidence at trial. Since the Government has not argued that an exception to the exclusionary rule applies in these circumstances, and it is the Government's burden to do so, the Court concludes that the drugs discovered in Mr. Dominguez-Fernand's car must be suppressed.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Defendant Victor J. Dominguez-Fernand's Motion to Suppress. [Filing No. 71.]

Date: June 13, 2016

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Harold Samuel Ansell
ATTORNEY AT LAW
attorneyansell@gmail.com

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Barry D. Glickman
UNITED STATES ATTORNEY'S OFFICE
barry.glickman@usdoj.gov

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov